**RUSHOVICH MEHTANI LLP**
ELIOT J. RUSHOVICH (SBN 252343)
LISA M. WATANABE-PEAGLER (SBN 258182)
5900 Wilshire Blvd., Suite 2600
Los Angeles, California 90036-5013
Telephone: (323) 330-0543
Facsimile: (323) 395-5507
erushovich@rmlawpartners.com
lwatanabe@rmlawpartners.com

Attorneys for Plaintiff
LAMONT YOUNG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LAMONT YOUNG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AZUSA PACIFIC UNIVERSITY, a California corporation: HANNY [LAST NAME UNKNOWN], an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **DISCRIMINATION BASED UPON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. §§ 2000e-2 *et. seq.*;**<br><br>2. **HOSTILE WORK ENVIRONMENT HARASSMENT BASED UPON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. §§ 2000e-2 *et. seq.*;**<br><br>3. **RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. §§ 2000e-3 *et. seq.*;**<br><br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br><br>5. **NEGLIGENT RETENTION AND SUPERVISION; and**<br><br>6. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Lamont Young ("Plaintiff" or "Mr. Young"), hereby brings this Complaint against Defendants Azusa Pacific University, Hanny (last name unknown)[1] and Does 1 through 50, inclusive, and alleges the following based on knowledge as to himself and his known acts, and on information and belief as to all other matters:

## I.

## NATURE OF THE ACTION

1.      Notwithstanding the great advances that we have made as a country over the past fifty years to reach racial equality among all people, racism continues to exist in our society.  Indeed, it often rears its ugly head in places that we least expect it.  But when racism arises, it is the responsibility of every single person and every single institution to stand up and speak out against it, and to make all changes necessary to eradicate it for good.  Immediately.

2.      Unfortunately, when Azusa Pacific University ("APU" or the "University") was faced with a serious complaint of racism by its supervisorial staff against Mr. Young – the only African American male employee – at the University owned school bakery, APU did just the opposite.  Instead of taking swift action to address the racism, APU allowed the conduct to continue for months and maliciously retaliated against Mr. Young for complaining about it.

3.       This case seeks redress for the blatant and egregious racism Mr. Young suffered during his employment at APU, a private evangelical Christian institution ironically founded on principles of love towards God and each other.  Mr. Young was subjected to racial harassment by his supervisor, including the hanging of a monkey – an overt symbol of the historical racist association between African Americans and monkeys or apes – by a rope around its neck that was next to, and pointed directly towards, his work station. (*See* **Exhibit A**.)  Over the next several weeks, the supervisor

---

[1] Plaintiff is currently unaware of Hanny's last name.  Plaintiff will seek necessary information regarding Hanny in early discovery to ensure he has proper notice and service of the Complaint against him.

COMPLAINT FOR DAMAGES                    RUSHOVICH MEHTANI LLP

frequently laughed and shook or hit the hanging monkey in front of other employees only after he spoke to, or instructed, Mr. Young about work matters.   This work environment including the horrific portrayal of a lynching should never be tolerable anywhere in today's society, let alone at a religious institution that preaches a commitment to approach "diversity from a biblical perspective, affirming that diversity is an expression of God's image, love, and boundless creativity." (http://www.apu.edu/about/diversity).

4.     Mr. Young's factual allegations are detailed in Section IV below.  In short, Mr. Young alleges that his supervisor deliberately created a hostile work environment for him based in whole or part on his race and/or national origin and the University repeatedly authorized, ratified and/or failed to take appropriate corrective action notwithstanding numerous verbal and written requests by Mr. Young.   In the case of the hanging monkey, Mr. Young had to file several complaints including an email to the University's Assistant Director of Dining Services attaching photographs of real lynchings of African Americans to convince management that the hanging monkey was in fact racist and offensive and should be taken down.  (*See* **Exhibit B**.)  Despite such complaints, the racial harassment increased and was later compounded by other management personnel and his co-workers such that Mr. Young was ultimately compelled to resign from his employment in December 2015.

## II.

## PARTIES

5.     At the relevant times mentioned herein, Plaintiff was employed by the University.  Plaintiff performed work for the University in Los Angeles County.  The unlawful conduct alleged herein occurred in Los Angeles County.  Plaintiff is, and at the relevant times mentioned herein was, a resident of Los Angeles County.

6.     At the relevant times mentioned herein, the University was a California corporation conducting business in Los Angeles County with its principal place of business in Los Angeles County.

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

7.     At the relevant times mentioned herein, Hanny (last name unknown, "Hanny") was an individual employed by the University to perform work for the University within Los Angeles County.  Hanny is, and at the relevant times mentioned herein was, a resident of Los Angeles County.

8.     At the relevant times mentioned herein, the University was an employer of Plaintiff as such term is defined by Title VII of the Civil Rights Act of 1964 (as amended) ("Title VII").

9.     Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when the name has been ascertained.  Each of the fictitiously named defendants is responsible in some manner for the acts complained of herein.  Unless otherwise stated, all references to named defendants shall include the DOE defendants as well.

## III.

## <u>JURISDICTION AND VENUE</u>

10.     Federal jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises, in part, under Title VII, a federal law of the United States.  Supplemental jurisdiction also exists for the other state law claims because they are "so related to [the Title VII] claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" pursuant to 28 U.S.C. § 1367.

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## IV.

## <u>FACTUAL ALLEGATIONS</u>

12.     The University owns and operates Glendora Café and Bakery (the

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

"Bakery") located in Glendora, California.  The Bakery prepares various baked goods such as bagels, breads, cookies, muffins and pastries for the University and the surrounding community.  The University employs several student workers who work alongside food service staff under the direction of culinary chefs at the Bakery.  Plaintiff was a student worker employed by the University at the Bakery from on or about August 4, 2014 to on or about December 12, 2015.   During his employment, Plaintiff was also a student at the University taking courses to receive his Bachelor of Arts degree in Psychology.

13.   Throughout his employment, Plaintiff reported directly to Hanny, the Bakery's former Student Worker Supervisor.  Plaintiff also reported to Dean Gotto ("Dean"), the Bakery's former Head Baker.   Plaintiff is an African American male. During his employment, Plaintiff was the only African American male that worked at the Bakery.

14.   Shortly after Plaintiff started working at the Bakery, he was subjected to frequent and repeated harassment by Hanny based in whole or part on his race and/or national origin.  Moreover, the University, including members of its management at the Bakery, repeatedly ratified and/or failed to take appropriate corrective action with respect to such conduct notwithstanding Plaintiff's multiple written and verbal complaints.  On a daily or near-daily basis, Hanny would go out of his way to make Plaintiff's life difficult by yelling at him, laughing at him, disciplining him, embarrassing him and demeaning him in various ways.  Hanny deliberately created a hostile work environment for Plaintiff based in whole or part on his race and/or national origin, and the harassment was compounded when Plaintiff complained about it, as explained below.

15.   While there have been innumerable instances of harassment that, taken together, created a hostile work environment for Plaintiff, the following list reflects some examples that describe the manner of the harassment:

a.   Hanny repeatedly demanded that Plaintiff not talk to, or interact

COMPLAINT FOR DAMAGES                                                    RUSHOVICH MEHTANI LLP

with, other student workers at the workplace.  He also expressly told several student workers not to work with, or assist, Plaintiff.  Hanny did not make similar demands or treat other student workers in this same manner.

    b.    Hanny frequently complained to Plaintiff whenever Plaintiff played hip hop or African music at the workplace.  Hanny often commented that these genres of music were noise that no one wanted to hear.

    c.    Hanny repeatedly told Plaintiff in a sarcastic and demeaning tone "that Black people can sing" whenever Plaintiff sang gospel songs at the workplace.

16.    In or around the end of 2014, Plaintiff complained to management about Hanny formally disciplining him for a trivial work matter.  Shortly thereafter, Hanny hung a stuffed animal monkey, an overt symbol of racist stereotyping of African Americans, at the edge of his shelf so that it directly faced Plaintiff's work area.  The association between African Americans and monkeys or apes is part of a long history of racist stereotyping of African Americans in the United States, particularly in the 1800s when the South used this association to justify slavery, to solidify the de facto second class citizen status imposed on African Americans by Jim Crow laws, and to discriminate against African Americans.  The association depicts African Americans as less than human representing the notion that African Americans were considered by some Whites to be more simian than human, and therefore had no self-evident rights, including freedom.  Needless to say, Plaintiff was outraged and offended by the hanging monkey.  Even worse, Hanny had hung the monkey with a rope tied around its neck so as to portray a lynching.

17.    Over the next several weeks, Hanny frequently laughed and shook or hit the hanging monkey in front of other employees only after he spoke to, or instructed, Plaintiff about work matters.  Plaintiff repeatedly asked that Hanny take down the hanging monkey but Hanny refused to do so.  In response, Hanny told Plaintiff "it was

COMPLAINT FOR DAMAGES

no big deal," the monkey didn't mean anything" and that it "simply was a gift from a friend" (or words of similar import).  Plaintiff also frequently complained about the offensive nature of the hanging monkey to Dean and others in management but nothing was done in response nor was the hanging monkey taken down by anyone for several weeks.  Plaintiff finally wrote a letter to Human Resources about the hanging monkey.  Dean eventually took the hanging monkey down at Hanny's work station and admitted to Plaintiff while he was doing so that it was "wrong and should have been taken down a long time ago."

18.  In addition to this hanging monkey incident, Plaintiff repeatedly complained to Dean and others in management about Hanny's unlawful harassment set forth above in writing and in person throughout his employment.  However, Plaintiff's complaints were ignored, not taken seriously or not appropriately responded to by the Bakery's management.  In addition to the harassment Plaintiff himself suffered, Plaintiff also observed harassing conduct against another female co-worker, Mary (last name unknown), who was the only other African American individual that worked at the Bakery during Plaintiff's employment.

19.  Up until the time he left, Hanny subjected Plaintiff to increased harassment at the workplace in retaliation for his complaints about his misconduct.  Hanny repeatedly yelled, questioned, intimidated and ignored Plaintiff at the workplace.  For instance, Hanny constantly pointed and laughed at Plaintiff with other employees, intentionally pushed carts or other objects at Plaintiff and closed doors in Plaintiff's face at the workplace.  In another instance, Hanny overheard Plaintiff asking Dean for some assistance and Hanny ran towards Plaintiff and yelled that "no one [wa]s going to work with [him]" (or words of similar import).

20.  The harassment against Plaintiff continued even after Dean and Hanny left the Bakery in or around early 2015 and September/October 2015, respectively.  Thereafter, Plaintiff continued to be subjected to harassment at the workplace by other University management personnel and employees including, but not limited to,

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

Executive Chef Daniel Dufort, in retaliation for his prior complaints about Hanny's misconduct and his eventual departure from the University.   The University's management staff and its employees repeatedly made comments in Plaintiff's presence that "Blacks are always talking about racism," "Hanny didn't deserve to lose his job" and "the monkey wasn't that big of a deal" (or words of similar import).

21.   As a result of the foregoing, Plaintiff has suffered, and continues to suffer, from extreme emotional distress, including, but not limited to, ongoing stress, worry and anxiety that resulted in severe chest pains, a skin rash and high blood pressure. Starting in or around September/October 2015, Plaintiff sought medical treatment for these health conditions.

22.   On or about December 12, 2015, after having suffered numerous instances of harassment, mistreatment and distress with the University repeatedly authorizing, ratifying and/or failing to take appropriate corrective action notwithstanding numerous verbal and written requests by Plaintiff for the University to address the various incidents that Plaintiff suffered, Plaintiff was forced to resign from his employment with the University – Plaintiff had been constructively terminated.

23.   The University's and Hanny's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").   The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the University's internal policies.   The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

24.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based in whole or part on his race and/or national origin.  Among other things, the Managing Agents discriminated against Plaintiff based in whole or part on

COMPLAINT FOR DAMAGES                                         RUSHOVICH MEHTANI LLP

his race and/or national origin by, among other things, creating a hostile work environment for Plaintiff.

25.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, the Managing Agents created a hostile work environment for Plaintiff to intentionally cause him harm, because they wanted to punish him for, *inter alia*, making complaints about racial discrimination and harassment.   The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

26.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents created a hostile work environment for Plaintiff unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

## V.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.   Prior to the initiation of this lawsuit, Plaintiff filed charges against each named defendant with the California Department of Fair Employment and Housing (the "DFEH") and the Equal Employment Opportunity Commission ("EEOC"), alleging the claims described in this Complaint.   The DFEH and EEOC issued "right to sue" letters. True and correct copies of Plaintiff's administrative complaints and resulting "right to sue" letters are attached hereto collectively as **Exhibit C**.  This action is being filed within one year of the date that the DFEH issued its right to sue letter, and within ninety days of the date that the EEOC issued its right to sue letter.  All conditions precedent to the institution of this lawsuit have been fulfilled.

///

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

# VI.

## FIRST CAUSE OF ACTION

**(Discrimination Based Upon Race and National Origin in Violation of Title VII)**

**(On Behalf of Plaintiff Against the University)**

28.   Plaintiff realleges and incorporates by reference paragraphs 1-27, inclusive, of this Complaint as though fully set forth herein.

29.   Title VII makes it an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race … or national origin." 42 U.S.C. § 2000e-2(a)(1).   Plaintiff is of African American race and/or national origin and is entitled to the protections of Title VII with respect to both his race and/or national origin.

30.   As explained in paragraphs 12-22 above, the University's supervisory and management employees, including Hanny and Dean, discriminated against Plaintiff based in whole or part on his race and/or national origin in violation of Title VII through numerous illegal acts, including, without limitation, constructively terminating his employment based in whole or part on his race and/or national origin.

31.   As a proximate result of the University's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.   Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.   The amount of Plaintiff's damages will be ascertained at trial.

32.   The University's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").   The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital

aspects of such operations including making significant decisions that affect the University's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

33.    In committing the foregoing acts, the University has engaged in discriminatory practices with malice and/or reckless indifference to the federally protected rights of Plaintiff, thereby entitling Plaintiff to punitive damages under 42 USC 1981a(b) in a sum appropriate to punish and make an example out of the University.

34.    The acts of malice and/or reckless indifference were engaged in by employees of the University.  The University had advance knowledge of the unfitness of each employee who acted with malice and/or reckless indifference, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of malice and/or reckless indifference.  The advance knowledge and conscious disregard, authorization, ratification, or act of malice and/or reckless indifference was committed by or on part of an officer, director, or managing agent of the University, thereby entitling Plaintiff to punitive and exemplary damages against the University in accordance with California Civil Code section 3294 in a sum appropriate to punish and make an example of the University.

35.    Title VII provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

36.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

# VII.

## SECOND CAUSE OF ACTION

**(Hostile Work Environment Based Upon Race and National Origin in Violation of Title VII)**

**(On Behalf of Plaintiff Against the University and Hanny)**

37.　Plaintiff realleges and incorporates by reference paragraphs 1-36, inclusive, of this Complaint as though fully set forth herein.

38.　Title VII also makes it an unlawful employment practice for an employer to create a hostile, abusive work environment for an individual through harassment based in whole or part on race and/or national origin.  *See* 42 U.S.C. § 2000e-2(a); *see also Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78 (1998); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64-65 (1986).

39.　During the course of Plaintiff's employment, the University's employee, Hanny, engaged in a pattern of severe and pervasive harassment of Plaintiff based in whole or part on his race and/or national origin, which acts included, but were not limited to, those alleged in paragraphs 12-22 above.  The harassment was unwelcome and sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment.

40.　At the relevant times mentioned herein, Hanny was a "supervisor" within the meaning of Title VII because the University empowered him to take tangible employment actions against Plaintiff, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See, e.g., Vance v. Ball State University,* 133 S. Ct. 2434, 2443 (2013).  Because Hanny was a supervisor as defined by the Title VII and the courts, the University is strictly liable for his acts of harassment.

41.　As a proximate result of the University's and Hanny's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

42.    The University's and Hanny's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").   The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the University's internal policies.    The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

43.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based in whole or part on his race and/or national origin.  Among other things, the Managing Agents discriminated against Plaintiff based in whole or part on his race and/or national origin by, among other things, creating a hostile work environment for Plaintiff.

44.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, the Managing Agents created a hostile work environment for Plaintiff to intentionally cause him harm, because they wanted to punish him for, *inter alia*, making complaints about racial discrimination and harassment.   The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

45.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents created a hostile work environment for Plaintiff

COMPLAINT FOR DAMAGES                    RUSHOVICH MEHTANI LLP

unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

46.     Title VII provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

47.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VIII.

### THIRD CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

### (On Behalf of Plaintiff Against the University)

48.     Plaintiff realleges and incorporates by reference paragraphs 1-47, inclusive, of this Complaint as though fully set forth herein.

49.     Title VII makes it unlawful for an employer to "discriminate against any of his employees … because he has opposed any practice … or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]."

50.     The University discriminated against Plaintiff in retaliation for him engaging in protected activity in violation of Title VII, *i.e.*, for complaining about, and opposing, the discrimination and harassment he was subjected to by Hanny at the workplace, as described in paragraphs 12-22 above.   After Plaintiff's complaints, Plaintiff was subjected to increased harassment at the workplace such that he was forced to resign from his employment because of the abusive working environment.

51.     As a proximate result of the University's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

1    pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer
2    physical and emotional injuries, including nervousness, humiliation, depression,
3    anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The
4    amount of Plaintiff's damages will be ascertained at trial.

5         52.   The University's conduct, as described in paragraphs 12-22 above, was
6    performed or ratified by the managing agents of the University, including, but not
7    limited to, Hanny and Dean (collectively, the "Managing Agents").  The Managing
8    Agents were each responsible for overseeing a substantial portion of the University's
9    business operations, and each exercised substantial discretionary authority over vital
10   aspects of such operations including making significant decisions that affect the
11   University's internal policies.  The Managing Agents engaged in malicious, fraudulent,
12   and oppressive conduct that justifies an award of punitive damages.

13        53.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the
14   Managing Agents willfully disregarded Plaintiff's right to be free from unlawful
15   discrimination based in whole or part on his race and/or national origin.  Among other
16   things, the Managing Agents discriminated against Plaintiff based in whole or part on
17   his race and/or national origin by, among other things, creating a hostile work
18   environment for Plaintiff.

19        54.   In committing the foregoing acts as set forth in paragraphs 12-22 above,
20   the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust
21   hardship in conscious disregard for his rights under California law.  By way of example,
22   the Managing Agents created a hostile work environment for Plaintiff to intentionally
23   cause him harm, because they wanted to punish him for, *inter alia*, making complaints
24   about racial discrimination and harassment.   The Managing Agents' conduct
25   demonstrates a callous indifference for the law and Plaintiff's rights.

26        55.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the
27   Managing Agents intended to cause emotional and financial injury to Plaintiff.
28   Specifically, the Managing Agents created a hostile work environment for Plaintiff

COMPLAINT FOR DAMAGES      RUSHOVICH MEHTANI LLP

unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

56.    Title VII provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs.

57.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## IX.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (On Behalf of Plaintiff Against the University and Hanny)

58.    Plaintiff realleges and incorporates by reference paragraphs 1-57, inclusive, of this Complaint as though fully set forth herein.

59.    The University's and Hanny's conduct as alleged in paragraphs 12-22 above constitutes extreme and outrageous conduct toward Plaintiff.  In spite of Plaintiff's repeated complaints to employees and agents of the University, the University failed to address or otherwise curtail Hanny's harassing conduct.  In effect, the University ratified and adopted Hanny's conduct toward Plaintiff.

60.    The University and Hanny engaged in this conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiff.

61.    As a proximate result of the University's and Hanny's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness,

- 15 -

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

62.    The University's and Hanny's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").   The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the University's internal policies.   The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

63.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based in whole or part on his race and/or national origin.  Among other things, the Managing Agents discriminated against Plaintiff based in whole or part on his race and/or national origin by, among other things, creating a hostile work environment for Plaintiff.

64.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, the Managing Agents created a hostile work environment for Plaintiff to intentionally cause him harm, because they wanted to punish him for, *inter alia*, making complaints about racial discrimination and harassment.   The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

65.    In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents created a hostile work environment for Plaintiff unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional

- 16 -

RUSHOVICH MEHTANI LLP

1  wellbeing.

2      66.    Plaintiff has been generally damaged in an amount within the jurisdictional

3  limits of this Court.

## X.

### FIFTH CAUSE OF ACTION

**(Negligent Supervision and Retention)**

**(On Behalf of Plaintiff Against the University)**

67.    Plaintiff realleges and incorporates by reference paragraphs 1-66, inclusive, of this Complaint as though fully set forth herein.

68.    The conduct of the University's employee, Hanny, alleged in paragraphs 12-22 above constitutes conduct rendering such employee as unfit to perform the work for which he was hired.

69.    The University knew or should have known that its employee was unfit, and this unfitness created a particular risk of harm to other employees, including Plaintiff.

70.    The University's negligence in supervising and/or retaining Hanny was a substantial factor in causing Plaintiff's harm.

71.    As a proximate result of the University's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

72.    The University's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital

- 17 -

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

aspects of such operations including making significant decisions that affect the University's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

73. In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based in whole or part on his race and/or national origin. Among other things, the Managing Agents discriminated against Plaintiff based in whole or part on his race and/or national origin by, among other things, creating a hostile work environment for Plaintiff.

74. In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. By way of example, the Managing Agents created a hostile work environment for Plaintiff to intentionally cause him harm, because they wanted to punish him for, *inter alia*, making complaints about racial discrimination and harassment. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

75. In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents created a hostile work environment for Plaintiff unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

76. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

# XI.

## SIXTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (On Behalf of Plaintiff Against the University)

77.    Plaintiff realleges and incorporates by reference paragraphs 1-76, inclusive, of this Complaint as though fully set forth herein.

78.    The University's and Hanny's conduct as described above in paragraphs 12-22 created working conditions that were so unusually hostile and adverse that a reasonable employee in Plaintiff's position would have felt compelled to resign.

79.    As a result of the such hostile working conditions, Plaintiff was compelled to resign from the University and was constructively terminated.

80.    The University constructively terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various statutes and Constitutional provisions including, but not limited to, the Const. Art. I section 8 and Title VII.

81.    As a proximate result of the University's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

82.    The University's conduct, as described in paragraphs 12-22 above, was performed or ratified by the managing agents of the University, including, but not limited to, Hanny and Dean (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the University's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the

- 19 -

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

University's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

83.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based in whole or part on his race and/or national origin.  Among other things, the Managing Agents discriminated against Plaintiff based in whole or part on his race and/or national origin by, among other things, creating a hostile work environment for Plaintiff.

84.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, the Managing Agents created a hostile work environment for Plaintiff to intentionally cause him harm, because they wanted to punish him for, *inter alia*, making complaints about racial discrimination and harassment.  The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

85.   In committing the foregoing acts as set forth in paragraphs 12-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff.  Specifically, the Managing Agents created a hostile work environment for Plaintiff unlawfully with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

86.   Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XII.

## PRAYER FOR RELIEF

1.   For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

COMPLAINT FOR DAMAGES

RUSHOVICH MEHTANI LLP

2.      For special damages, according to proof on each cause of action for which such damages are available.

3.      For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

4.      For punitive damages, according to proof on each cause of action for which such damages are available.

5.      For declaratory and injunctive relief as appropriate.

6.      For prejudgment interest and post-judgment interest according to law.

7.      For reasonable attorneys' fees incurred in this action pursuant to Title VII.

8.      For costs of suit incurred in this action.

9.      For such other and further relief that the Court deems proper and just.

Dated: July 29, 2016                    RUSHOVICH MEHTANI LLP


                                        By: /s/ Lisa M. Watanabe-Peagler
                                            ELIOT RUSHOVICH
                                            LISA WATANABE-PEAGLER

                                        Attorneys for Plaintiff
                                        LAMONT YOUNG

COMPLAINT FOR DAMAGES                              **RUSHOVICH MEHTANI LLP**

## **DEMAND FOR JURY TRIAL**

Plaintiff Lamont Young hereby demands a trial by jury on all causes of action alleged in the Complaint for Damages.

Dated: July 29, 2016                    RUSHOVICH MEHTANI LLP


By: /s/ Lisa M. Watanabe-Peagler
    ELIOT RUSHOVICH
    LISA WATANABE-PEAGLER

Attorneys for Plaintiff
LAMONT YOUNG

COMPLAINT FOR DAMAGES                    RUSHOVICH MEHTANI LLP